IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| HENRY G. MOREMAN, IV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-113-SMD |
| | ) | |
| AUBURN UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION & ORDER**

Plaintiff Henry G. Moreman, IV, ("Moreman") filed a complaint against his employer Auburn University ("Auburn") alleging race and age employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); 42 U.S.C. § 1981; and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). Compl. (Doc. 1). Auburn moves for summary judgment on Moreman's claims. Mot. (Doc. 19). Auburn's motion is granted and this case is dismissed in its entirety.

## I. INTRODUCTION

Moreman, who has been employed by Auburn for more than eight years, was investigated by Auburn's Office of Equal Opportunity Compliance ("EEO Office") after a subordinate complained that Moreman discriminated against him on the basis of race and age. Following an investigation, the EEO Office concluded that Moreman violated Auburn's anti-discrimination policy with respect to age but not race and therefore took disciplinary action against him. Moreman then filed this suit, contending that Auburn's

disciplinary action against him was itself the product of race and age discrimination.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Generally, "[t]he mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, if the nonmoving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. *See Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000). The legal elements of a claim determine which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A fact is not material if a dispute over that fact would not affect the outcome of the case under the governing law. *Id.* In reviewing a motion for summary judgment, a court must view the facts and draw reasonable inferences in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III. UNDISPUTED FACTS

At the time of the events described in the complaint, Moreman was 48 years old and was employed by Auburn as Manager of In-House Construction. Moreman Depo. (Doc. 19-1) at 50:9-12; at 17:1-18:1. As part of his duties, Moreman supervised multiple employees, including Ja'Vone Dixon ("Dixon"), a 26-year-old Project Manager III. *Id*. at

18:4-6; Allan Decl. (Doc. 19-5) p. 4:49-51; Inv. Report (Doc. 19-5) p. 108. Dixon repeatedly requested from Moreman a promotion plan for the Project Manager IV position but did not receive one. EEO Compl. (Doc. 19-5) p. 19. As part of Dixon's 2024 performance evaluation, Moreman assigned Dixon a rating of "Meets Expectations" in the "Job Knowledge" category, stating that Dixon "is young in the field." *Id*. Dixon claims that Moreman regularly referenced his age by asking others to guess how young Dixon was, stating that Moreman had children Dixon's age, and remarking that he had to use "kid gloves" when dealing with Dixon. Dixon Interview (Doc. 19-5) p. 53; Inv. Report (Doc. 19-5) p. 109.

Auburn's Policy Against Discrimination and Harassment (the "Policy") states that Auburn "is committed to providing a work and educational environment free of Discrimination[.]" Policy (Doc. 19-5) p. 182. "Discrimination" is defined as "conduct directed at a specific individual or group of identifiable individuals that subjects the individual or group to treatment that adversely affects their . . . employment because of their Protected Status." *Id*. Under the Policy, protected status includes age. *Id*. at 181. The Policy provides broader protections than state law and the ADEA as it governs a university community that is composed largely of students and individuals under the age of 40. Mot. (Doc. 21) p. 9 (admitted fact).

In June 2024, Dixon complained to Auburn's EEO Office that Moreman discriminated against him based on age by repeatedly referencing his youth in connection with his readiness for promotion. EEO Compl. (Doc. 19-5) pp. 18-20. The EEO Office assigned Elexandria Reese ("Reese"), Director of Equal Opportunity Investigations and

Title IX and Title VI Coordinator, as lead investigator and Aria Allan ("Allan"), Assistant Vice President for Equal Opportunity Compliance and manager of the Title IX Office, as secondary investigator. Reese Depo. (Doc. 19-6) p. 8 at 25:3-7; Allan Decl. (Doc. 19-5) p. 2.

Reese and Allan interviewed ten individuals, including Dixon and Moreman, but did not interview two of the three witnesses identified by Moreman. Inv. Rep. (Doc. 19-5) p. 107; Moreman Affid. (Doc. 27-1) p. 4. Moreman claims that one of these witnesses was "uniquely qualified to provide insight into [his] leadership style and impartiality" while the other had information about Dixon's job performance and Dixon's attempt to elicit statements suggesting that Moreman had spoken negatively of Dixon. *See* Notes (Doc. 19-5) at 35:1-4; Moreman Depo. (Doc. 19-1) at 19:20-22; p. 106 at ¶ 12; Appeal (Doc. 19-5) p. 310. Reese explained that these witnesses were not interviewed because the first was being offered as a character witness and the other only had knowledge related to Dixon's job performance instead of information related to Moreman's purported discrimination. Reese Depo. (Doc. 19-6) at 19:20-22; 35:17-22.

As part of the investigation, Dixon produced two audio recordings of his conversations with Moreman. Recordings (Doc. 20). In one, Moreman told Dixon that proving a 45-year-old capable of a role is "not the same" as proving a 26-year-old capable "because of your youth." *Id.*; Inv. Rep. (Doc. 19-5) p. 110. In the other, when Dixon stated he felt "heavily scrutinized just because of my age," Moreman responded "yes." *Id.* At least two witnesses—including Jamie Wheels ("Wheels") and Charles Locke ("Locke")—reported that Moreman referenced Dixon's age or youth. Wheels Interview (Doc. 19-5) p.

59 (Wheels stating that Moreman said that Dixon was young, did not know what he was doing, and was more worried about talking on the phone than doing his job);[1] Locke Interview (Doc. 19-5) pp. 63-64 (Locke reporting that he heard Moreman state that Dixon is "young" and "too young for that."). Other witnesses attributed Moreman's comments to Dixon's relative inexperience rather than his age. Moore Interview (Doc. 19-5) p. 90 (stating that he heard Moreman refer to Dixon as "young" but attributing this comment to experience instead of age); Conradson Interview (Doc. 19-5) p. 95 (attributing Moreman's comments to Dixon's experience); Moody Interview (Doc. 19-5) p. 102 (same); Vickers Interview (Doc. 19-5) p. 141 (same).

In his EEO interview, Moreman stated that his references to Dixon as being "young" were intended to describe Dixon's relative level of experience in the construction industry rather than his age. Moreman Interview (Doc. 19-5) p. 117. However, in his deposition, he testified that he "assume[d]" he had referred to Dixon as "too young" without clarifying he meant experience but did not know for certain. Moreman Depo. (Doc. 19-1) at 109:19-23.

On October 11, 2024, the EEO Office issued an Outcome Letter finding, by a preponderance of the evidence, that Moreman violated the Policy with respect to age discrimination. Outcome Letter (Doc. 19-5) pp. 274-281. Specifically, Reese concluded that "the overarching evidence demonstrates a clear pattern and frequency of age-based comments and an impermissible focus on [Dixon's] youth as a limitation on his professional advancement and capabilities." *Id*. at 276. Reese testified that in reaching this

[1] Reese's conclusion letter does not explicitly state that she relied on Wheels's testimony to reach her conclusion that Moreman violated the Policy. Letter (Doc. 19-5) pp. 134-37.

conclusion, she considered witness statements and the recordings collectively, did not weigh every witness equally, and assessed credibility, including potential bias. Reese Depo. (Doc. 19-6) at 44:21-46:16; 58:11-60:9; 118:8-16. As a result of the EEO Office's investigation, Auburn recommended corrective action that included a written promotion action plan for Dixon, revision of the Project Manager job description, discrimination training for Moreman, reassigning Moreman to a non-supervisory role, a five-year bar on supervisory positions, and a final written reprimand. Action (Doc. 19-5) p. 280. Moreman's salary was not reduced. Moreman Depo. (Doc. 19-1) at 37:13-38:6. Allan reviewed and approved Reese's determination. Allan Dec. (Doc. 19-5) p. 3.

Moreman appealed the EEO Office's decision, arguing that federal and state age-discrimination statutes only protect individuals who are at least 40 years old; that portions of the witness summaries were inaccurate; and that certain witnesses he identified had not been interviewed. Appeal (Doc. 19-5) pp. 309-11. Kelley Taylor ("Taylor"), who was the Director of AA/EEO and Title IX Director at that time, denied Moreman's appeal. Taylor Letter (Doc. 19-5) pp. 320-21.

Moreman testified that his former position remained unfilled as of his deposition and that his understanding was that Auburn was "reconsidering how they organize at the top level." Moreman Depo. (Doc. 19-1) at 42:11-43:23. In contradiction to this testimony, Moreman declared in his affidavit that "[o]n information and belief," his duties were transferred to an Assistant Director roughly ten years his junior with "very little leadership experience." Moreman Affid. (Doc. 27-1) p. 4.

## IV. ANALYSIS

### A. Moreman's Race Discrimination Claim (Count I) Is Abandoned.

Moreman's opposition brief does not mention, let alone develop, an argument in support of his race discrimination claim pursuant to Title VII/§ 1981. "[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Therefore, Auburn is entitled to summary judgment on Moreman's Title VII/§ 1981 race discrimination claim on that basis alone.

### B. Moreman's Age Discrimination Claim (Count II) Should Be Dismissed Because Moreman Lacks Sufficient Evidence to Show Intentional Age Discrimination.

Moreman claims that Auburn discriminated against him because of his age by taking corrective action against him following the EEO Office's investigation. Compl. (Doc. 1) ¶¶ 20-34. To determine whether Auburn discriminated against Moreman because of his age, this Court must "ask only one question: whether there is a sufficient evidentiary basis for the jury to find that [Auburn] intentionally discriminated against [Moreman]." *Tynes v. Fla. Dep't of Juvenile Justice*, 88 F. 4th 939, 947 (11th Cir. 2023). To establish intentional discrimination under the ADEA, Moreman must "prove that age was the 'but-for' cause of [Auburn's] adverse decision." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1335-36 (11th Cir. 2013). He argues that he has done so through application of the *McDonnell Douglas* burden-shifting framework and the "convincing mosaic" framework. Resp. (Doc. 28). The Court examines each method in turn.

**1. Moreman's age discrimination claim fails when evaluated under the *McDonnell Douglas* framework.**

To establish intentional discrimination under the *McDonnell-Douglas* burden-shifting framework, the plaintiff first must establish a prima facie case of discrimination. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc) ("*Lewis I*"). To do so, a plaintiff must show "(1) that [he] was a member of the protected group of persons between the ages of forty and seventy; (2) that [he] was subject to adverse employment action; (3) that a substantially younger person filled the position . . . from which [he] was discharged; and (4) that [he] was qualified to do the job for which [he] was rejected." *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012). *See Lewis*, 918 F.3d at 1221; *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory or non-retaliatory reason for its adverse action. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). If the defendant meets this burden, the plaintiff then must show by a preponderance of the evidence that the defendant's proffered reasons "were not its true reasons" but rather a "pretext" for discrimination. *Id.*

**i. Moreman cannot establish a prima facie case of discrimination.**

Auburn does not dispute that Moreman, for purposes of his prima facie case, belongs

to a protected age class, suffered an adverse employment action, and was qualified for his former position. Mot. (Doc. 21) p. 21. It does, however, dispute whether Moreman has produced sufficient evidence to show that Auburn replaced him with, or treated more favorably, an employee outside his protected class. *See Lewis I*, 918 F.3d at 1220-21.

In response, Moreman points to a single sentence in his declaration, submitted "on information and belief," asserting that his duties were transferred to a younger Assistant Director. Moreman Affid. (Doc. 27-1) p. 4. Under well-settled Eleventh Circuit authority, however, a statement made "on information and belief" is not competent evidence at the summary judgment stage. *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) (Rule 56's "personal knowledge requirement prevents statements in affidavits that are based, in part, 'upon information and belief'—instead of only knowledge—from raising genuine issues of fact sufficient to defeat summary judgment."); FED. R. CIV. P. 56(c)(4). Thus, without more, Moreman's evidence is insufficient to establish a prima facie case of age discrimination under the *McDonnell Douglas* framework.[2]

**ii. Moreman cannot show pretext.**

Assuming *arguendo* that Moreman has pointed to sufficient evidence to satisfy the fourth element of the *McDonnell Douglas* framework, Moreman's age discrimination

---

[2] Notably, Moreman's declaration "on information and belief" directly contradicts his own prior sworn deposition testimony that his position remained unfilled and that Auburn was "reconsidering how they organize at the top level." Moreman Depo. (Doc. 19-1) at 42:11-18. A plaintiff cannot manufacture a genuine issue of fact by contradicting his own sworn testimony with a later, more favorable, and evidentiarily deficient declaration. *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984); *Pace*, 283 F.3d at 1278; FED. R. CIV. P. 56(c)(4). Because Moreman offers no admissible evidence that he was replaced by or treated less favorably than someone substantially younger than him, he cannot establish a prima facie case under *McDonnell Douglas* via his declaration.

claim still fails because he cannot show pretext. Auburn has articulated a legitimate, nondiscriminatory reason for its action: that Moreman engaged in age-related discrimination of a subordinate in violation of Auburn's Policy. Mot. (Doc. 21) p. 22 n.4 (noting that Auburn's legitimate, non-discriminatory reason for its actions "was the investigation that concluded that Moreman violated the Policy"); *see Ossman v. Meredith Corp.*, 82 F.4th 1007, 1016 (11th Cir. 2023) (finding that employee's violation of employer's sexual harassment policy was legitimate, nondiscriminatory reason for employee's termination). The burden therefore shifts to Moreman to show that this reason is both false and a pretext for age discrimination—a showing that is especially demanding given the ADEA's "but-for" causation standard. *Sims*, 704 F.3d at 1335-36.

The pretext inquiry "centers on the employer's beliefs, not the employee's beliefs [and] . . . not on reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). An employer may rely on the outcome of an internal investigation so long as it holds a good-faith belief that a violation occurred. *EEOC v. Total Sys. Servs.*, 221 F.3d 1171, 1176-77 (11th Cir. 2000). However, pretext may be established where an employer's investigation into an employee's alleged misconduct was so flawed, incomplete, or methodologically deficient that a reasonable factfinder could conclude the investigation was not conducted in good faith but was instead a vehicle to justify a predetermined, discriminatory outcome.[3] Even so, because the ADEA

[3] *See Trujillo v. PacifiCorp*, 524 F.3d 1149, 1159-60 (10th Cir. 2008) (holding that a factfinder can reasonably infer pretext not only from greater leniency toward similarly situated employees but also from shortcomings in the employer's investigation, including the employer's failure to interview a key witness); *accord Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 542 (10th Cir. 2014) (a failure to conduct what appears to be a fair investigation of the violation that purportedly prompted the adverse action may support

requires proof that age was the "but-for" cause of the adverse action, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009), a plaintiff must connect the investigation's supposed deficiencies directly to age bias in order to show discriminatory intent.

Moreman argues that the investigation's outcome was not supported by a preponderance of the evidence because only one of the eight witnesses interviewed supported Dixon's complaint. Resp. (Doc. 28) p. 28. He also contends that Reese's failure to interview two of his three witnesses, along with her failure to record the interviews instead of taking notes, shows that the investigation was not complete and therefore flawed. *Id*. Neither argument establishes a pretext for age discrimination.

**A. The preponderance standard is satisfied regardless of the eight-witness tally.**

Moreman's "one of eight witnesses" argument asks this Court to sit as a "super-personnel department" and reweigh an internal disciplinary decision—a role this Court cannot assume. *Elrod v. Sears, Roebuck & Co*., 939 F.2d 1466, 1470 (11th Cir. 1991) (A federal court cannot "sit as a super-personnel department that reexamines an entity's business decisions."). In any event, the preponderance standard asks only whether a proposition is more likely true than not. *See Concrete Pipe & Prods. Of Calif., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993). Reese testified that she based her conclusion on the totality of the record, which included an audio recording where

---

an inference of pretext) (quoting *Trujillo*, 524 F.3d at 1160). *See also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 858 (D.C. Cir. 2006) (finding that record evidence suggesting the investigation central to the plaintiff's termination was "not just flawed but inexplicably unfair" was sufficient to survive summary judgment on pretext).

Moreman told Dixon that proving a 45-year-old capable of a role is "not the same" as proving a 26-year-old capable, "because of [Dixon's] youth." Recordings (Doc. 20). The record also included a second recording in which Dixon asked Moreman whether he was being scrutinized "because of [his] age," and Moreman responded "yes." *Id.*; Inv. Rep. (Doc. 19-5) p. 110. These recordings alone are sufficient to support the EEO Office's conclusion that Moreman discriminated against Dixon based on age in violation of Auburn's Policy—regardless of whether witnesses characterized Moreman's comments as relating to experience rather than age.

**B. Moreman's challenges to Reese's investigative methodology do not show discriminatory intent.**

Moreman's remaining arguments—that Reese failed to interview two of his witnesses and took notes rather than recording interviews—attack the adequacy of the investigation. But claims of inadequacies of an investigator or the investigation itself are irrelevant unless they are the result of discrimination. *James Thompson v. Ga. Power Co.*, 2025 WL 610878, at *7 (N.D. Ga. Jan. 27, 2025); *Powe v. Farmers Ins. Exch.*, 667 F. Supp. 3d 1227, 1245 (N.D. Ga. 2023) (Courts do not sit to "second guess the adequacy of the investigation."). Accordingly, even a flawed investigation does not establish pretext absent evidence tying the flaw to discriminatory intent. *Chukes v. Sailormen, Inc.*, 648 F. App'x 779, 782 (11th Cir. 2016); *Frazier v. Sec'y, Dep't of Health & Human Servs.*, 710 F. App'x 864, 871 (11th Cir. 2017) ("That a plaintiff's evidence suggests that an employment decision was unwise or unfair or inaccurate does not alone suggest that it was discriminatory[.]").

Moreman identifies no such link here. By his own description, he offered the two uninterviewed witnesses to speak to his general character and to Dixon's job performance—topics outside the scope of an age-discrimination investigation and outside the Policy's requirement that witnesses "observe[] the acts in question or have information relevant to the incident." Policy (Doc. 19-5) p. 184. Further, Reese's practice of taking contemporaneous notes rather than recording interviews was her standard practice across all investigations, not a procedure applied uniquely to Moreman. Reese Depo. (Doc. 19-6) at 50:11-51:4. Neither choice reflects an intention to discriminate against Moreman because of his age.

**iii. Conclusion**

In conclusion, Moreman fails to present sufficient evidence to establish a prima facie case of age discrimination pursuant to the *McDonnell Douglas* framework. And even if he could, he fails to present sufficient evidence to establish that Auburn's legitimate, non-discriminatory reason for its action is a pretext for age discrimination. As such, Moreman's age discrimination claim fails to survive summary judgment when evaluated under the *McDonnell Douglas* standard.

**2. Moreman's age discrimination claim fails when evaluated under the "convincing mosaic" standard.**

To establish intentional discrimination under the "convincing mosaic" standard, a plaintiff must point to "circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Tynes*, 88 F.4th at 946. Importantly, an inference "is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact

exists on the basis of another fact[.]" *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 n.25 (11th Cir. 2011). In determining whether there is a convincing mosaic of intentional discrimination, courts consider "among other things, (1) suspicious timing, ambiguous statements[,] and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) ("*Lewis II*").

The Court has reviewed the record as to each factor and finds no convincing mosaic. First, as to ambiguous statements or suspicious timing, Moreman concedes that Reese and Allan "were not foolish enough to make any negative comments about Moreman's age," Resp. (Doc. 28) p. 23, which forecloses any claim of explicit discriminatory animus by the actual decisionmakers. Further, the timeline itself does not raise suspicion: Dixon complained to the EEO Office in June 2024. EEO Compl. (Doc. 19-5) pp. 18-20. The EEO Office then interviewed ten witnesses over several months. Inv. Rep. (Doc. 19-5) p. 107. The Outcome Letter issued on October 11, 2024. Outcome Letter (Doc. 19-5) pp. 274-281. Moreman identifies nothing about this sequence that departs from the ordinary course of an EEO investigation, and he points to no evidence that Auburn manipulated the timing of its process for a discriminatory purpose.

Second, as to comparator evidence, Moreman does not identify any similarly situated employee, let alone one treated more favorably than he was. As discussed previously, Moreman's only evidence on this point—the "on information and belief" assertion that his duties were transferred to a younger Assistant Director—is not competent

summary judgment evidence and, in any event, says nothing about how that individual was treated relative to Moreman in a comparable disciplinary context. *See Pace*, 283 F.3d at 1278; *Stewart*, 232 F.3d at 851.

Third, as to pretext, the Court has already explained why Moreman's arguments—that only a minority of witnesses corroborated an age-based motive and that the investigation was procedurally deficient—fail to show that Auburn's stated reason was false or that age was the but-for cause of its decision. *See supra* Section IV.B.1. Those same evidentiary deficiencies preclude a finding of pretext under the convincing-mosaic framework.

In sum, when viewed cumulatively and in the light most favorable to Moreman, the record does not contain a convincing mosaic of circumstantial evidence of age discrimination. As such, Moreman's age discrimination claim fails to survive summary judgment when evaluated under the convincing mosaic standard.

## V. CONCLUSION

Because Moreman has abandoned his race discrimination claim and has not pointed to sufficient evidence showing that Auburn intentionally discriminated against him because of his age, Auburn's Motion for Summary Judgment (Doc. 19) is GRANTED as to both Count I (race discrimination) and Count II (age discrimination).

Judgment is entered in favor of Defendant Auburn University and against Plaintiff Henry G. Moreman, IV, on all claims. A separate judgment will issue.

DONE this 15th day of September, 2026.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE